[ * 436 ]

## * AARON PORTER *versus* BENJAMIN BUSSEY.

In every insurance on a ship or goods, there is an implied warranty that the ship shall be seaworthy. If the ship be not seaworthy, the policy will be void, though the insured was ignorant of the fact. And it is competent to the *insured* in an action for a return of premium, to show that the ship was not seaworthy.

THIS was an action upon a policy of insurance effected the 7th day of August, 1797, upon the ship *Paulina*, and appurtenances, and cargo, (being lumber,) from *Biddeford* to port or ports in the *West Indies*, and at and from thence to her port of discharge in the *United States*, beginning the adventure upon the vessel and cargo from *Biddeford*, and to continue during the voyage aforesaid, and until the vessel should be arrived and moored at anchor twenty-four hours in safety at her port of discharge in the *United States*. The cargo warranted free from average under —— per cent. The defendant was an insurer to the amount of 500 dollars, one moiety on the vessel and appurtenances, and the other moiety upon the cargo; at 25 per cent. premium. The declaration contained two counts:—1. on the policy, and, 2. *indebitatus assumpsit* for 200 dollars money had and received; and the case was submitted to the Court on the following state of facts, *viz.*: That the defendant under wrote upon the policy of assurance as set forth in the first count in the plaintiff's declaration, and received the premium therein men tioned; that the said ship *Paulina* sailed from *Biddeford* on or about the 18th of July, 1797, bound to *Antigua* and a market, with orders to proceed as far to leeward as *Jamaica*, unless a good market could be found before, and arrived at *Antigua* on or about the 25th of August following; that, in the course of said voyage, said vessel sprung a-leak, and had a continual leak, which prevented her proceeding further without repairs; that at said *Antigua* the deck load was landed, and the vessel in part hove down, and her sides calked and repaired at great expense, *with a view of proceeding further*

326

but not being able to stop the leak, her cargo (consisting * of lumber) was sold, and the vessel further exam- [ * 437 ] ined, and two worm-holes were found through her bottom of about three quarters of an inch diameter, which were stopped, and the vessel hove down and repaired at great expense; and afterwards sailed for *Saco*, and on the morning following fell in with a *French* privateer, and went into *St. Bartholomews* to avoid her, where the captain was *under the necessity of reshipping* the net proceeds of his cargo in another vessel, the brig *Hope*, to *Portland*, in the *United States;* after which said vessel proceeded to *Norfolk* in *Virginia*, instead of *Saco*, leaking badly on the passage; at *Norfolk* she was hove down several times, and a leak discovered in her sternpost, which was then supposed to be the principal leak; after stopping said leak, a cargo of lumber was taken on board, and said vessel proceeded to *Jamaica*, leaking badly the whole passage; that after discharging her cargo, said vessel proceeded for said *Norfolk* in ballast, it not being judged safe to take a cargo of sugar on board; and in consequence of the leaky situation of said vessel, and stress of weather, the people on board were obliged to keep the pumps continually going to keep her from sinking, and she was compelled to put into *Wilmington*, in *North Carolina*, where, upon heaving her down, a bolt hole of one inch and a quarter diameter was discovered through her keel, passing up under her keelson; that said vessel was new at the time of her sailing, and built on contract; that the auger-hole and worm-holes were open at the time of her sailing from *Saco*, (*a*) but of which neither party had any knowledge; that if said vessel had proceeded from *Antigua* to *Jamaica* with her outward bound cargo, the same would have sold for double the price it was sold for at *Antigua*.

* And if the Court should be of opinion, from the [ * 438 ] above state of facts, that the plaintiff is entitled to recover as for a return of premium, then the defendant agrees to be defaulted, and that judgment be rendered for a return of premium agreeably to said policy, and costs of suit; but if, from said statement, the Court should be of opinion that the plaintiff is not entitled *so* to recover, the plaintiff agrees to become nonsuit, and that judgment be rendered against him.

This cause was argued at May term, 1804, in this county, by *P. Mellen* for the plaintiff, and *Livermore* for the defendant, before *Dana*, C. J., *Strong*, *Sewall*, and *Thacher*, justices. And *now*,

SEDGWICK, J., said that three of the justices who heard the

(*a*) *Biddeford* is part of *Saco*.

argument were of opinion that the plaintiff was entitled to recover, and judgment was accordingly rendered for the plaintiff. He said that he gave no opinion of his own, not having heard the arguments.

The Court directed that interest be allowed on the premium from the time of the service of the writ; as they also did in three or four other causes depending here, which had been continued to the present term, and in which it had been agreed by the parties that judgment should be rendered according to the decision which should be made in the present case.

The succeeding week, at *Cumberland, P. Mellen* moved that interest might be allowed from the time the premiums had been paid to the insurers; as they had, as he contended, retained the money from that time wrongfully.

The Court (*Sedgwick, Sewall,* and *Thacher,* justices) denied the motion, because they had never gone further than to allow interest from the service of the writ; and till very lately no interest had been allowed in actions for money had and received.

[ * 439 ] *[Although SEDGWICK, J., did not state the ground of the decision of the three justices who were of opinion that the plaintiff was entitled to recover, and although I was not present at the argument, yet from the following sketch, which I am authorized to make, the questions made by the counsel, and the principles upon which the opinion of the judge who dissented, as well as of those who were in favor of the plaintiff, were founded, may probably be understood.]

The judge who differed in opinion from the others considered these questions—*First,* whether, upon the facts, a want of seaworthiness, in the sense and to the extent which avoids policies altogether, had appeared in this case. Admitting a want of seaworthiness to the extent which would avoid demands, as partial damages arising immediately from leakiness, &c., yet here was not that entire defect of vessel which renders her unworthy to be the subject of any contract; and it was too late for the plaintiff in this action to say she was wholly incapable of performing the voyage insured, when, in a legal sense at least, and as regards this contract, she had actually performed it. *Secondly,* supposing the want of seaworthiness as extensive, and that the defect of the vessel might have been as fatal to the policy as the insured would now maintain it to have been, whether the insured can object this, to avoid his own contract entered into at his request and suggestion, after it has been in a legal sense at least performed by the other party. And connected with this in argument, but distinguishable as a more general question—*thirdly,* whether, in any case, when the policy has not

been objected to or avoided, by the insurer, on the ground of a want of seaworthiness, the law will permit this suggestion from the insured for the purpose of recovering back his premium. Upon these questions, he thought that upon the distinction between *executed* and *executory* contracts, the defend- [ * 440 ] ant in this case might repel the demand of a premium or consideration which had been given upon a contract executed, and no longer executory between the parties. And to this effect is the reasoning of Justice *Buller* in *Lowry* vs. *Bourdieu* (*a*) cited and applied in this view of it by Lord *Mansfield* in *Wharton* vs. *De la Rive.* (*b*) That no case similar to the present had been reported in *England.* There are cases of a return of premium, where, to an action upon a policy, the insurer had objected and had prevailed in showing a want of seaworthiness to avoid the policy; the premium had been tendered by the defendant, and, upon a decision in his favor, the money had been taken out of court by the plaintiff in such case. That it might be questionable whether it would have been thought expedient in any case, on an objection of this kind, to permit a recovery of the premium, if the subject had been fully considered; but there could be no reason for extending the law beyond the decisions which had occurred, and these were confined to the cases where this objection had been established by the insurer; not one had occurred where the insured had attempted to avail himself of it. That the action for the money had and received is always a demand *pro æquo et bono*, and in mercantile cases was often to be considered as a mere question of general expediency. Now, here, upon this ground, it might fairly be urged for the defendant, that he had incurred many risks, from which this accidental discovery of a particular defect in the construction of this vessel could not by any chance whatever have operated to release him; as if the ship, being new, had foundered; had been captured and condemned; had been wrecked, &c. Against the demand on this policy for which this premium had been given, he had not been discharged * by the defect of the vessel, [ * 441 ] but by the limitation in the contract itself; and, independent of that limitation, there had been ground to believe that the plaintiff would have never disclosed this discovery, as he had diligently pursued his demand upon the policy, until his defect of proof on the amount of his damage had been decided, and then he, and not the defendant, had introduced the discovery of the treenail-hole. That the consequences of a decision for the plaintiff, considering this as a question of expediency, would be extensively injuri-

(*a*) *Doug.* 451.—*Marshall*, 550.   (*b*) *Park*, 459.—*Marshall*, 552.

VOL. I.   28 *   329

ous   If premiums paid on the next preceding voyage might be recovered back, upon a discovery of this kind, nothing could prevent the like demands and judgments for premiums of policies upon any number of preceding voyages, ever so far back ; there would be a new opening for frauds on insurers, &c.

The judges who were in favor of the plaintiff rested their opinion on the general doctrine, (from which there has been no decided exception,) *viz.,* that in every contract of insurance, there is an implied warranty, that the ship is seaworthy ; and if it appear that she was not so, the contract is void.   That this policy must be deemed void on the facts disclosed in the case stated ; that no insurance had attached upon this defective vessel, and of course no premium had been due, and is now unjustly detained.—*Marshall,* 156, 363, &c. 557.